IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01668-MSK-CBS

DAVID HIGHLAND CASSIRER,
    Plaintiff,
v.

SAN MIGUEL COUNTY BOARD OF COUNTY COMMISSIONERS,
    Defendant.

**ORDER REGARDING PLAINTIFF'S MOTION TO MODIFY
THE SCHEDULING ORDER**

Magistrate Judge Shaffer

*Pro se* Plaintiff David Cassirer has filed a Motion to Modify the Scheduling Order (doc. # 95) pursuant to Fed.R.Civ.P. 16(b)(4) as an essential prerequisite for obtaining responses to discovery requests that he candidly acknowledges were served on Defendant San Miguel County Board of County Commissioners (hereinafter "San Miguel County") after the deadline established in the October 8, 2008 Scheduling Order (doc. # 40). Not surprisingly, Defendant San Miguel County has filed an Opposition to Plaintiff's Motion (doc. # 100). Mr. Cassirer filed a Reply (doc. # 104) on June 15, 2009. By Order of Reference, dated August 11, 2008, this matter was referred to the Magistrate Judge to, *inter alia*, "enter a Scheduling Order meeting the requirements of D.C.COLO.LCivR 16.2; and hear and determine any motions seeking amendment or modification of the Scheduling Order" and "[h]ear and determine motions relating to discovery." After carefully considering the parties' briefs, the entire case file and the applicable law, the court will deny the instant motion.

1

**FACTUAL BACKGROUND**

The court held a Rule 16 scheduling conference on October 8, 2008 and entered a Scheduling Order that adopted the discovery cut-off date (April 10, 2009) proposed by the parties and set a dispositive motion deadline of May 11, 2009.  The parties originally had proposed a deadline of December 19, 2009 for serving interrogatories and requests for production.  After discussions with Mr. Cassirer and counsel for Defendant San Miguel County, the court modified the proposed Scheduling Order to require that written discovery be served by March 7, 2009.  Neither of the parties voiced an objection to that revised deadline.

On January 26, 2009, Mr. Cassirer filed an Unopposed Motion for Enlargement of Time (doc. # 60).  The court granted that motion during a telephone status conference (doc. # 62) on January 30, 2009.  During the January 30, 2009 status conference, the court specifically inquired as to the parties' discovery efforts since the scheduling conference on October 8, 2008.  Mr. Cassirer stated that "he was doing his best" and had narrowed the scope of his anticipated experts, but found himself facing unforeseen obstacles in meeting the deadline for designating experts.  At the conclusion of the January 30 status conference, the court extended the deadlines for designating affirmative and rebuttal experts to March 2, and April 2, 2009, respectively.  I also extended the discovery cut-off to April 30, 2009 and the dispositive motion deadline to May 30, 2009.   During the January 30, 2009 status conference, Plaintiff made no reference to written discovery and there were no requests to extend the March 7, 2009 deadline for serving written discovery.

Defendant San Miguel County moved, without opposition, on March 17, 2009 for an extension of time to designate rebuttal experts.  This motion, filed before the applicable deadline

had lapsed, requested an extension in order to allow sufficient time for Defendant's rebuttal experts to inspect the subject property. I granted this motion with a Minute Order (doc. # 80) dated March 19, 2009.

Also on March 17 2009, Plaintiff filed an Unopposed Motion for Enlargement of Time, requesting an additional two weeks to respond to Defendant's Motion to Dismiss and Defendant's written discovery requests. This motion did not ask the court to reconsider or adjust the March 7, 2009 deadline for serving written discovery. Judge Krieger granted the requested enlargement of time with an Order (doc. # 78) dated March 17, 2009.

The court addressed discovery issues with the parties during a telephone conference on March 30, 2009. In the course of that conference, Mr. Cassirer expressed some concern regarding Defendant's desire to depose his former counsel and possible privilege issues implicated by those impending depositions. After considering the comments of counsel and Mr. Cassirer, I directed that the depositions should proceed, while reserving Mr. Cassirer's right to assert privilege claims in response to specific questions during the depositions. Mr. Cassirer raised the possibility of extending the April 30, 2009 discovery cutoff to allow sufficient time to take these depositions. In response to the court's inquiry as to what additional discovery needed to be completed, the parties indicated that the only outstanding discovery involved the depositions of Mr. Cassirer's previous counsel. At the conclusion of this conference, the court reminded the parties that the discovery deadline remained April 30, 2009.

Plaintiff filed an Unopposed Motion for Clarification (doc. # 83) on March 31, 2009. This motion asked the court to extend the time for Mr. Cassirer to respond to Defendant's Motion to Dismiss, answer Defendant's counterclaims, and serve responses to Defendant's First

and Second Sets of Discovery Requests. This motion did not address the lapsed deadline for serving discovery requests.

On April 22, 2009, the court held a telephone discovery conference with Mr. Cassirer and counsel for Defendant San Miguel County. Defense counsel advised the court that San Miguel County had been served with written discovery requests on April 8, 2009, after the deadline set in the parties' Scheduling Order. Plaintiff advised the court that he had missed the March 7, 2009 deadline through inadvertence because he believed that discovery could be served "right up to the discovery cutoff." The court held that Defendant would not be required to answer Plaintiff's untimely discovery requests, but permitted Mr. Cassirer to file an appropriate motion under Fed.R.Civ.P. 16(b)(4) seeking an extension of the deadline for serving discovery.

Plaintiff Cassirer's Motion states that "the heavy 'front loading' of the discovery schedule, in a case where there was little or no chance of early settlement, and with a trial not anticipated until sometime in 2010, [is] burdensome indeed." *See* Plaintiff's Motion to Modify the Scheduling Order, at ¶ 3. Mr. Cassirer claims that he missed the March 7 deadline for serving written discovery because he "mistakenly interpreted an extension of the discovery cutoff to April 30th and/or other changes to the Scheduling Order as also affecting the dates concerning submission of discovery requests." *Id.* at ¶ 4. Plaintiff contends that the written discovery that he served in April 2009 includes requests for production and requests for admission that "go to Plaintiff's allegations of equal protection violations and selective enforcement against him by Defendant San Miguel County and its public officials."

> *e.g.,* Plaintiff has asked the County to demonstrate any prior enforcement against any citizen of San Miguel County of BOCC Reso. 1978-86, an obscure amendatory zoning resolution that Defendant is asking this Court, in its counterclaims against Plaintiff, to enforce today, despite the fact that this

4

> resolution was repealed nearly twenty years ago, when the County's 1972 Zoning Resolution, as amended, was repealed in its entirety without saving clause or pending action at the time.

*Id.* at ¶ 8 (emphasis in original).

Defendant San Miguel County opposes Plaintiff's requested relief, arguing that Mr. Cassirer has failed to demonstrate the requisite diligence to satisfy the good cause standard under Fed.R.Civ.P. 16(b)(4).

## ANALYSIS

As a threshold matter, the court finds that the discovery requests served by Plaintiff Cassirer on April 8, 2009 were untimely in view of the discovery cutoff date of April 30, 2009. As the Tenth Circuit noted in *Thomas v. Pacificorp*, 324 F.3d 1176, 1179 (10th Cir. 2003) (internal citations omitted),

> The Federal Rules of Civil Procedure allow parties thirty days to respond to interrogatories and requests for production. Therefore, requests must be served at least thirty days prior to a completion of discovery deadline.

*Cf. NE Technologies, Inc v. Evolving Systems, Inc.*, 2008 WL 4277668, *5 (D. N.J. 2008) (requests for discovery must be made "with sufficient time to allow the answering party to respond before the termination of discovery"); *Williams v. Little Rock Municipal Water Works*, 155 F.R.D. 188, 189 (E.D. Ark. 1993) (held that defendant was not required to respond to discovery requests that "were not propounded in time for the responses to be due before the discovery cutoff"). *See also Whitman v. Proconex, Inc.*, 2009 WL 113740, *4 (E.D. Pa. 2009) ("In the absence of a stipulation between the parties that a shorter response time be permitted, 'requests [for production] must be served at least thirty days prior to completion of discovery deadline'"). Given the untimely service of his discovery requests, Plaintiff Cassirer has moved

to extend the discovery deadline, which, in turn, implicates two different provisions of the Federal Rules of Civil Procedure.

Although Mr. Cassirer raised the timing of his discovery requests during a telephone discovery conference on April 22, 2009, he filed the instant motion after the April 30 deadline had passed. Rule 6 of the Federal Rules of Civil Procedure provides that when an act must be done within a specified time, the court may extend the time "on motion made after the date has expired if the party failed to act because of excusable neglect." *See* Fed.R.Civ.P.6(b)(1)(B). The Tenth Circuit has held that a finding of excusable neglect under Rule 6(b)(1)(B) requires both a demonstration of good faith by the party seeking the enlargement and a finding that there was a reasonable basis for not complying within the specified period. *See In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288, 1290-91 (10th Cir. 1974). While the court has no reason to believe that Mr. Cassirer acted in bad faith,

> [t]o determine whether the neglect is "excusable," the court must take account of all relevant circumstances surrounding the party's omission, including "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Control over the circumstances of the delay is "the most important single . . . factor . . . in determining whether neglect is excusable."

*Stringfellow v. Brown*, 105 F.3d 670, *1 (10th Cir. 1997) (Table) (holding that the trial court properly rejected a late filing where it appeared plaintiff's counsel knew of his obligation to respond, but simply disregarded the deadline based upon the volume of evidence to review and his own workload) (internal citations omitted). *See also Schupper v. Edie*, 193 Fed. Appx. 744, 746, 2006 WL 2053769, *2 (10th Cir. 2006).[1] In the final analysis, Rule 6(b)(1)(B)'s "excusable

---

[1] Copies of these unpublished cases are attached to this Order.

6

neglect" standard requires an equitable determination, "taking account of all relevant circumstances surrounding the party's omission." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993). However, "[i]t is not enough for excusable neglect that the plaintiff appears pro se and has otherwise not been dilatory." *Pflum v. United States*, 2002 WL 1334857, *1 (D. Kan. 2002).

In this case, Mr. Cassirer complains about the "nearly overwhelming" demands of the discovery schedule, and the "infinitely greater" litigation resources available to San Miguel County. These factors, standing alone, will not suffice to satisfy Rule 6(b)(1)(B). "Although pro se litigants get the benefit of more generous treatment in some respects, they must nonetheless follow the same rules of procedure that govern other litigants." *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 549 (10th Cir. 2000), citing *Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 139 (10th Cir. 1994). *See also Clonlara, Inc. v. Runkel*, 722 F. Supp. 1442, 1448-49 (E.D. Mich. 1989) (holding that plaintiffs' motion for additional time to conduct discovery was not supported by a showing of excusable neglect in light of plaintiffs' failure to use effectively the time permitted under the scheduling order).

Mr. Cassirer also says that he mistakenly assumed that an extension of the discovery cutoff automatically extended the deadline for serving discovery requests, and largely attributes that mistake to "his unfamiliarity with the process in federal court, and his lack of experience dealing directly with these scheduling and calendaring issues." Yet, a party's "'pro se status [does not] entitle him to disregard the Federal Rules of Civil Procedure, even without affirmative notice of the application of the rules to his case.'" *Cf. Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2000). *See also Swimmer v. IRS*, 811 F.2d 1343, 1345 (9th Cir. 1987)

("[i]gnorance of court rules does not constitute excusable neglect, even if the litigant appears *pro se*").

Finally, Plaintiff contends that his failure to appreciate the significance of the missed March 7th deadline for serving discovery was exacerbated by the death of his father one week later. While the court can appreciate the enormity of Mr. Cassirer's loss, the "excusable neglect" standard is not met simply because an untimely filing is attributed to the press of other matters. *See, e.g., Baker v. Raulie*, 879 F.2d 1396, 1399-1400 (6th Cir. 1989) (an attorney's preoccupation or involvement in other cases or litigation does not constitute excusable neglect); *McLaughlin v. City of La Grange*, 662 F.2d 1385, 1387 (11th Cir. 1981) (upholding denial of motion for enlargement of time to respond to summary judgment motion where plaintiff's counsel was a sole practitioner and engaged in the preparation of other cases; the fact that counsel had a busy litigation practice does not establish "excusable neglect" under Rule 6(b)); *Mawhinney v. Heckler*, 600 F. Supp. 783, 784 (D. Me. 1985) (counsel's backlog of cases would not establish excusable neglect under Rule 6(b)). The fact that Mr. Cassirer is appearing *pro se* in this case does not make these precedents less persuasive. I also note that the March 7th deadline had already expired before Plaintiff's father passed away. Under the facts presented in this case, I find that Plaintiff has failed to satisfy the "excusable neglect" standard incorporated in Rule 6(b).

Even assuming that Mr. Cassirer could overcome the hurdles imposed by Rule 6(b)(1)(B), the court must still address the "good cause" standard mandated by Fed.R.Civ.P. 16(b). That Rule provides that a scheduling order "may be modified only for good cause and with the judge's consent." *See* Fed.R.Civ.P. 16(b)(4). *See also* D.C. COLO. LCivR 16.1 ("The schedule established by a scheduling order shall not be modified except upon a showing of good

cause and by leave of court"). This "good cause" requirement reflects the important role a scheduling order plays in the court's management of its docket. *Cf. Washington v. Arapahoe County Department of Social Services,* 197 F.R.D. 439, 441 (D. Colo. 2000) (noting that a "scheduling order is an important tool necessary for the orderly preparation of a case for trial"). *See also Rent-a-Center, Inc. v. 47 Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 101 (S.D.N.Y. 2003) ("scheduling orders are designed to offer a degree of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed and the case will proceed"); *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) ("a scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril").

The "good cause" standard requires the moving party to show that despite his diligent efforts, he could not have reasonably met the scheduled deadline. *See Pumpco, Inc. v. Schenker International, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001). *See also* Advisory Committee Notes to 1983 Amendment to Fed. R. Civ. P. 16(b) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension"). The good cause standard "primarily considers the diligence of the party seeking the amendment." *Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005) ("[m]ere failure on the part of counsel to proceed promptly with the normal processes of discovery and trial preparation should not be considered good cause"). *Cf. Widhelm v. Wal-Mart Stores, Inc.*, 162 F.R.D. 591, 593 (D. Neb. 1995) (holding that parties are not entitled to relief from pretrial deadlines where those parties have been lax in conducting discovery); *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985) (holding that motion failed to

establish "good cause" under Rule 16(b) where counsel failed to immediately undertake discovery and sought a belated extension of pretrial deadlines).

      Mr. Cassirer claims that an extension of the discovery deadline is necessary in order to obtain responses to his First Set of Discovery Requests which seek to elicit information regarding "any prior enforcement against any citizen of San Miguel County of BOCC Reso. 1978-86." Plaintiff's claim of necessity is belied by the procedural history of this litigation.

      Mr. Cassirer could have begun formal discovery in this case immediately after the parties' Rule 26(f) conference on September 29, 2008. *See* Fed.R.Civ.P. 26(d) ("a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)"). Measured from that date, Plaintiff had more than five months in which to serve written discovery in advance of the March 7, 2009 deadline established in the Scheduling Order. I also note that BOCC Resolution 1978-86 has been referenced in the parties' pleadings almost from the beginning of the litigation. This Resolution was cited in Defendant's Answer and Counterclaims (doc. # 5), filed on August 8, 2008, and attached thereto as an exhibit. Mr. Cassirer's Amended Complaint (doc. # 47), filed on October 31, 2008, referred to BOCC Resolution 1978-86 in paragraphs 58-59, 65-67 and 71 of the "Factual Background" section, as well as the unnumbered paragraphs setting forth the equal protection and due process violations alleged in the Seventh Claim for Relief. Plaintiff's Second Amended Complaint (doc. # 70) was filed well before the March 7th deadline for serving written discovery, and references BOCC Resolution 1978-86 in paragraphs 22, 36, 62-65 and 67, as well as paragraph 78 included in Mr. Cassirer's due process and equal protection claim (First Claim for Relief). In short, Mr. Cassirer has been aware since at least August 2008 that the applicability and enforcement history of BOCC Resolution 1978-86

may be relevant to this litigation.  *Cf. Schaal v. Fender*, 2009 WL 1244183, *3 n.2 (D. Colo. 2009) (Krieger, J.) (while recognizing that a *pro se* litigant may lack the knowledge to pursue discovery as expeditiously as the Federal Rules allow, held that plaintiff's *pro se* status did not relieve him of the obligation to obtain discovery in a timely manner); *New York Life Insurance Co. v. Morales*, 2008 WL 2622875, *3 n.3 (S.D. Cal. 2008) (finding that defendant's failure to pursue available and clearly relevant discovery undercut his claim of reasonable diligence under Rule 16(b)).

Plaintiff's motion fails to explain persuasively why he was unable to obtain the desired information within the deadlines imposed by the Scheduling Order.  More importantly, Mr. Cassirer makes no showing of due diligence in pursuing the discovery he belatedly wishes to obtain.  "[W]here a party fails to pursue discovery in the face of a court-ordered cutoff, as here, that party may not be heard to plead prejudice resulting from his own inaction."  *Secord v. Cockburn*, 747 F. Supp. 779, 786 (D.D.C. 1990) (citation omitted).  *See also Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927 (2d Cir. 1985) (denying plaintiff's request to reopen discovery when plaintiff had "ample time in which to pursue the discovery that it now claims is essential").  Given this lack of diligence in pursuing discovery relating to BOCC Resolution 1978-86, the court concludes that Plaintiff has failed to satisfy the good cause requirement of Rule 16(b)(4).

Mr. Cassirer's claim to need additional time to serve written discovery also seems at odds with his 76-page Motion for Summary Judgment (doc. #102), filed on June 4, 2009.  Plaintiff has moved for summary judgment, *inter alia*, on his First Claim for Relief, as well as Defendant's August 8, 2008 Counterclaims, each of which apparently implicates BOCC Resolution 1978-86.

In referring to that Resolution, Mr. Cassirer states:

> In its pleadings and motion papers, Defendant takes the position that this obscure, repealed, amendatory zoning resolution from November of 1998 (Ex. R to the 1st Amd. Complaint) is and was, at all relevant times, fully applicable to the subject property, while the record clearly indicates that it was not. In addition, Defendant has repeatedly asserted, without legal or rational basis, that BOCC Reso. 1978-86 contained the same *six-month mandatory minimum lease length* requirement as does LUC § 5-1302(B)(I), first enacted over a decade later, in 1990.
>
> Following discovery in this matter, and based on the pleadings and motions filed in this case, and based on information and belief, Plaintiff asserts that Defendant has apparently never, in over thirty years since it was first enacted, enforced BOCC Reso. 1978-86 with respect to short-term vacation rentals. This supports Plaintiff's contention of equal protection violations by County officials.
>
> In any event, <u>Plaintiff was never noticed with any alleged violations</u> concerning BOCC Reso. 1978-86, in violation of the County's own enforcement regulations set forth at LUC § 1-1601 (Ex. HH to 2nd Amd. Complaint). Thus Defendant's repeated assertion of these violations of the earlier County Zoning Resolution against Plaintiff clearly violates his procedural due process rights. And asserting this repealed statute against Plaintiff violates his substantive due process rights as well.

*See* Plaintiff's Motion for Summary Judgment, at 15-16 (emphasis in original).  Under the circumstances, I find no justification for modifying the Scheduling Order and effectively allowing Plaintiff to re-open discovery on the very subject that figures so prominently in Plaintiff's Motion for Summary Judgment.

ACCORDINGLY, for the foregoing reasons, Plaintiff Cassirer's Motion to Modify the Scheduling Order (doc. # 95) is DENIED.

**Advisement to the Parties**

Within ten days after service of a copy of a Magistrate Judge's order, any party may serve and file written objections to the order.  Fed. R. Civ. P. 72(a).  "A judge of the court may

reconsider any pretrial matter . . . where it has been shown that the magistrate's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). *See also* Fed. R. Civ. P. 72(a) ("The district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.").

Failure to make timely objections to the Magistrate Judge's order(s) may bar review by the District Judge and will result in a waiver of the right to appeal. *See Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir.1997) ("[p]roperly filed objections resolved by the district court are a prerequisite to our review of a magistrate judge's order under 28 U.S.C. § 636(b)(1)(A)"); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991) (holding failure to timely object to a magistrate's findings waives appellate review of factual and legal questions).

DATED this 23rd day of June, 2009.

                            BY THE COURT:

                            s/Craig B. Shaffer
                            United States Magistrate Judge